UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

LSI, et al.,                        )
                                    )
          Plaintiffs,               )
                                    )
vs.                                 )    No. C 15-04307-EMC
                                    )
FUNAI ELECTRIC, et al.,             )
                                    )
          Defendants.               )
_____)

                              San Francisco, California
                              Thursday, October 15, 2015

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
            RECORDING 9:38 - 10:19 = 41 MINUTES

APPEARANCES:

For Plaintiffs:
                              Kilpatrick, Townsend &
                                Stockton, LLP
                              1400 Wewatta Street
                              Suite 600
                              Denver, Colorado 80202
                         BY:  KRISTOPHER LANE REED, ESQ.

For Defendants
                              Baker & Hostetler, LLP
                              312 Walnut Street, Suite 3200
                              Cincinnati, Ohio 45202
                         BY:  KEVIN W. KIRSCH, ESQ.
                              DAVID A. MANCINO, ESQ.

Transcribed by:               Echo Reporting, Inc.
                              Contracted Court Reporter/
                              Transcriber
                              echoreporting@yahoo.com

*Echo Reporting, Inc.*

2

Thursday, October 15, 2015                              9:38 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Calling Case C 15-4307, LSI versus Funai Electric Company.

Counsel, please come to the podium and state your name for the record.

MR. REED:  Good morning, your Honor.  Kristopher Reed on behalf of Plaintiffs.

THE COURT:  All right.  Good morning, Mr. Reed.

MR. KIRSCH:  Good morning, your Honor.  Kevin Kirsch on behalf of the Defendants.

THE COURT:  Kirsch.

MR. KIRSCH:  For Funai.

THE COURT:  All right.  Good morning.

Maybe you can give me a one-minute tutorial about what this technology is about so I have a better sense of what we're talking about here.

MR. REED:  Of course, your Honor.  There's two broad categories of technology at issue here.  One deals with wireless technology centered around 80211 standard, the patents.  The other -- that involves three of the patents at issue.  The other two patents involve video, and in particular, video compression and storage dealing with the storage of video in an efficient manner as well as, in

particular, the methodology and system for compressing digital video essentially to be transmitted over the Internet or other ways.

So, in a nutshell, that would be the five patents at issue here, your Honor.

THE COURT:  And when you say the wireless technology, what is the central teaching of these patents? What do these patents teach?

MR. REED:  The patents teach methodologies for transmitting -- securely transmitting wireless information, methodology that is, in our view, used in the 80211 standards that are relevant today.

THE COURT:  So the accused products particularly would be?  What's an example?

MR. REED:  In this particular instance it would be television sets that have -- what are called smart television sets that have WiFi capability.

THE COURT:  Smart TV with WiFi capability?

MR. REED:  WiFi chip, your Honor, that's responsible for performing the WiFi communication.

THE COURT:  Compression which allows -- facilitates transmission and in the use of wireless technology transmits --

MR. REED:  Compression goes more to the video side, your Honor.  That would be a separate chip.  So the

WiFi would be one chip.  The graphics chip would be accomplishing the video side of things, as well as the associated storage.

THE COURT:  So they're two -- they're separate?  I mean, these two groups of technologies are really separate?

MR. REED:  For all effective purposes, yes, your Honor.

THE COURT:  All right.  Any comments from your perspective?

MR. KIRSCH:  No, your Honor.  I think Mr. Reed accurately described.

THE COURT:  And -- so tell me the global picture of what else is going on in the proceedings.  Just give me a sense of where this all fits in, this lawsuit here fits into other --

MR. REED:  Well, your Honor, this began with two proceedings, one in the Central District and one in the International Trade Commission.  The International Trade Commission proceedings concluded sometime ago, a couple of years ago.  They ran their course.  During the midst of that, the parties agreed to a license on one of those categories we just discussed, the video compression and storage side of things.  The other one ran its course through the Federal Circuit, and it's concluded, at which point the litigation in the Central District was -- the stay was lifted and it began

and then was transferred to this Court.

Now, in the meantime the license has come and gone. The license has expired at this point just recently. For that purpose we requested and your Honor granted our ability to file a third amended complaint alleging infringement of that second category, the video patents, and so in terms of the way this case fits in, there's a history here. These patents have been litigated before. There's record that we're bringing over from the ITC. Again, your Honor signed that stipulation, so there's a history and a knowledge of these patents. There's familiarity, but at the same time, in terms of this particular case, the District Court stuck with this case. We really are at the beginning.

THE COURT: When you say -- I understand that there was a licensing with respect to the ITC proceedings on the video compression technology. A license agreement was entered into which has since expired.

MR. REED: That's correct, your Honor.

THE COURT: Further proceedings that went up to the Circuit, Federal Circuit?

MR. REED: That's right.

THE COURT: For the wireless technology?

MR. REED: For the wireless technology. And, just to make sure in specific, there's one patent that's at issue here that was not at issue during the ITC proceedings, the

6

'148, a ring patent, but the other two patents, they ran the course. One of them has now expired, but we are seeking past damages on that patent, and went up to the Federal Circuit. The Federal Circuit ended up adjudicating the case not on the basis of anything to do with the patents themselves but on the basis of a lack of domestic industry which is ITC specific. They did question the claim construction that was entered in the ITC, saying that LSI had raised serious questions regarding that claim construction but did not reach that issue in light of the finding on domestic industry.

THE COURT: So there was claim construction at the ITC, but it was never adjudicated at the Circuit level?

MR. REED: That's correct, your Honor.

THE COURT: Commented on but not adjudicated?

MR. REED: Commented on but not adjudicated, that's correct.

THE COURT: Is it your view that we essentially start from scratch here or we do have at least an administrative agency's construction?

MR. REED: We do have some benefit from the agency instruction, your Honor, with respect to four of the five patents at issue. But procedurally, in terms of where we are on the case, there's no answer to the complaint. We're at the beginning.

In addition, your Honor, some of these patents were

7

involved in prior litigation before your Honor, which we noted in the joint case management statement. And so there's also claim construction orders that do exist -- or order that does exist in the Barnes and Noble case in particular that may inform some of the disputes the parties have in this particular instance. In some instances it did involve the same claims.

THE COURT: Let me dust off my old order and see. So we have -- we have some background here, and --

MR. REED: There's some background.

THE COURT: And that informs, I guess, the question of scheduling which you have proposed, and at least taking it through claim construction you're off by about five weeks in terms of what you're suggesting, primarily because of the holiday season and because of lead counsel's trial in January?

MR. KIRSCH: Actually, there's three issues, and you've identified two of them. The first is that they have -- according to Plaintiffs' schedule, they're actually trying to put things such as the exchange of terms for construction in between Christmas and New Years, December 28th. So we want to avoid that. Also, their 4-2 requirement of exchange of preliminary constructions and evidence is on January 18th, which is one week before I'm scheduled to start a trial in the Southern District of Ohio for Muzak. We want to make

8

sure that we have an opportunity to fully engage, meet and confer, and do an appropriately sound job working with the opposing counsel and also have sufficient time to do our work.

And so we've proposed the January 11th date for the exchange of terms for construction and then a February 15th date for the exchange of the preliminary constructions and evidence.

We've made up a lot of that time in our proposed schedule leading up to the date of the opening claim construction brief where at that stage we're literally only about three weeks apart.  This is another point of departure, though.  They want, for our responsive claim construction brief on a five-patent case to be due two weeks after the opening claim construction brief, and we think that that time is just simply too short for a five-patent case.  So, therefore, we respectfully request that the Court adopt our --

THE COURT:  Well, there may be five patents, but, you know, we have a limit on the number of claims we're going to construe.  So --

MR. KIRSCH:  Yes.  And obviously we're going to be working with counsel to narrow it down to a level that's satisfactory for the Court.  We still think with the amount of patents we're talking about and the fact that we're

dealing with two different sets of technologies that we think four weeks would be a more appropriate time, and we'd respectfully ask for that four-week period.

So those are our -- our primary issues with respect to the proposed what I call the first phase, which is through the claim construction hearing and proposed schedule.

MR. REED:  Your Honor, if I may speak to that?

THE COURT:  Yes.

MR. REED:  The dates we put in here are not to appear we're heartless about the holidays.  You know, we -- they comply specifically with the time periods that are proscribed in the Patent Local Rules.  So just keying off of the invalidity contention dates, the dates we propose are precisely what is proscribed in the Patent Local Rules.

Now, we're not averse to softening that in some way around the holidays.  We're not trying to be draconian in how we're approaching this, but just so you see the genesis of our proposed dates, that everything, including the response time on the claim construction brief, is precisely what's proscribed in the Patent Local Rules.

Now, your Honor indicated where there are five patents here, there's a history here, and five patents is not something unusual in this District, and given the limitations that are set forth for the number of claims that can be disputed, we don't see anything unusual about this case that

would require longer briefing periods, and that's a theme that will continue on to the later dates that are in the schedule.  There's nothing here that requires such a lengthy and adjusted schedule beyond that which is described in the Local Rules.  We would ask the Court to have the parties comply with the Local Rules, follow those deadlines for the proscribed periods, and if there is some circumstance that requires some type of departure from those deadlines, that we address it at that time, not do that at the outset.

MR. KIRSCH:  Your Honor, we did try to stick within the spirit of the Patent Local Rules.  We've only made adjustments for holidays, trial issues, and then that one departure from the opening and responsive claim construction brief timing.  We just truly believe that two weeks is too short of a time for a five-patent case even with the restrictions that are set forth on the number of claims.  It's -- it's a very daunting task to address --

THE COURT:  I don't think it's any more daunting than any other claim -- every one of these is daunting, especially for courts.  I mean, you all, you know, this technology.  You've briefed it before.  I guess I must know something about it because I looked at at least some of the patents, some of the claims before, and I'll refresh my memory, but I don't see any extraordinary about this case that warrants deviation.  I mean, at the end we're talking

about a month interest, but every time, you know, you get a month here, a month there, and pretty soon you don't get the -- you know, and you look at your proposed trial schedule, that's a huge difference.

I can tell you right now the notion that we're going to schedule something two and a half years after the -- for trial, that's just too long.  So that's not going to happen.

MR. KIRSCH:  I mean, well, I'll -- I'd like to discuss at length some of the issues with their proposed schedule in the second phase.

THE COURT:  And I'm not going to set that second phase yet.

MR. KIRSCH:  Okay.

THE COURT:  You know, I want to at least today get through first phase, get us through claim construction, and then, you know, as we progress, we can set that, but I -- but it certainly wouldn't do any harm for you all to look at that once we set the first phase, to go back to the drawing table and see what's a more realistic proposed trial date, but December of 2017 is not.  So I'll make that clear now.

MR. KIRSCH:  Thank you, your Honor.

THE COURT:  You know, I -- I don't want to be heartless either.  On the other hand, the exchange of proposed terms is -- is in that holiday week.  I don't know that it's within two weeks.  You can always advance that.  I

don't know if -- I mean, given your experience with this case, I'm not sure why you couldn't take care of that, you know, in advance of the -- I mean, do you really need two full weeks after document production on the invalidity and the -- then you would have had the infringement contentions out there for two months.

MR. KIRSCH:  Your Honor, so, one, there is a patent that wasn't in the original case in the ITC.

THE COURT:  Yeah.

MR. KIRSCH:  But, on top of that, if we do advance it, then what we're going to be doing is we're going to be setting the 4-2 exchange for the preliminary -- preliminary constructions and the extrinsic evidence, which is actually the far more daunting of the two tasks and the far more extensive work needed for those, with Christmas and New Years actually in between those two dates while I'm preparing for a trial at the end of January.

And so the way we've set this up is we've attempted to, again, you know, just push back that first date a little bit past the -- the holidays and then allow for the exchange of the preliminary constructions and extrinsic evidence to occur.  It's a sufficient -- you know, it -- I'm actually giving myself only a week after the trial is completed, by our estimation, in the Muzak case in order to do that exchange.

THE COURT:  Well, I'm sympathetic to having to work on a trial and everything else.  On the other hand, you're not a solo practitioner.  You have other people who will be helping you with this.  So, you know, I -- it is not uncommon to have people have intervening trials and large evidentiary hearings and things and, you know, we just can't always accommodate, and I'm -- I'm very hesitant to let time slip in a way that is going to delay things a significant amount.  I mean, if you want to add a -- we want to add an additional week spacing -- what's our scheduling like in May, Betty?  And the problem is I only have half days for the most part.  So we're going to have -- claim construction is going to go a month long, and we may have to break it into two days, which is the other problem.

MR. KIRSCH:  Your Honor, while you're on that subject, maybe I should bring up one other issue.  There is another case that was just transferred to the Eastern District of Texas that the Plaintiffs have brought against an entity, and I'm going to mispronounce -- that's called Asustek.  They have filed a notice of related cases, and three of the patents in our case are the same patents in their case.

If the Court is going to, in fact, at some point deem the matters ought to be consolidated for at least pretrial purposes with respect to -- because of the commonality

14

between those three patents, we would want to work on a coordinated schedule with them.  We think that the schedule that we've just presented would work with them because they're actually ahead of us right now on the claim construction, but if we were going to do that, one possibility that we've been floating around with all the different counsel is -- nobody's actually agreed to this yet, but I just wanted to bring it to the Court's attention -- the idea of doing a two-day claim construction where the first day or the second day is devoted to the common patent.  So you're only hearing argument one time on the three common patents with all three of the parties present and then the second day being a day that's specific to each of the parties' own patents that don't have -- don't share commonality.

MR. REED:  Your Honor, if I may be heard on that?

THE COURT:  Go ahead.

MR. REED:  That second case that has just recently been transferred to your Honor is at a far advanced stage than these proceedings.  We were looking at -- we were scheduled for May trial dates in that case, May 2016.  We had already gone through majority of discovery.  Discovery was set to close in two months.  We'd already submitted opening claim construction briefs in that case.  So even under the -- under the schedule of the Northern District of California,

that case is six to eight months ahead of this case, and there's no cause for it, especially given the -- the difference of patents, differences of counsel, the different procedural status or stage of that case.  There's really no basis for putting the breaks on that case for three-quarters of the year in order for this one to try to catch up.  And so we would -- we would oppose any request to stop the proceedings in that case in order to try to let this case advance to the claim construction stage.

THE COURT:  What about -- what about consolidating the claim construction hearing?

MR. REED:  The problem with --

THE COURT:  I don't know if the claims are the same or what -- how much overlap there is.

MR. REED:  There would be some overlap, your Honor, but, you know, we're talking about three of seven patents in that case that overlap.  And that case is -- as I said, that case is almost ready for claim construction hearing now.  You know, we would be happy to have a claim construction hearing in a month in that case if your Honor was amenable, because that's a far cry different from where we are here.  So consolidating that hearing would -- we'd either have to put the brakes on that case for six to eight months, which we think would be prejudicial, or greatly accelerate the schedule in this case, which we probably would

16

not oppose, but I doubt opposing counsel would agree to that. So we think the best course, given the disparate stages of those two cases is receive the claim construction in the Asustek case, and to the extent that that claim construction informs this one, then your Honor can take that into consideration.

MR. KIRSCH:  We would -- we would not be in favor of advancing the schedule in our case in order to accommodate that.  The one concern we would have is that since there are going to be three patents out of the five patents in our case where there's going to be claim construction, we would like to participate in that process.  We would like to be able to weigh in.  So I think consolidating the cases for purposes of those three patents on the claim construction issues just makes a lot of sense.  They're not that far along with that. They've just done the opening claim construction brief.  They could pull back from that, and we could advance together on those three issues for judicial efficiency and also so that we'd have an opportunity to participate in the process.

THE COURT:  Well, under your proposal, you want to delay claim construction hearing here until June, and if you therefore want to consolidate, even though the opening briefs have already been filed in the other case, we wouldn't -- if we consolidate for purposes of claim construction, we wouldn't hear a consolidated claim construction hearing until

17

June, is that right?

MR. KIRSCH:  That would be what we'd be proposing, your Honor.

THE COURT:  So not only are we delaying this case, we're delaying the other case even more, and you want to advance the other case and hear that first and not consolidate because you don't want to delay it.

MR. KIRSCH:  That's correct, your Honor.  We were --

THE COURT:  I don't know how much sense that makes for -- for us to go through I don't know how many claims are going to be construed that actually overlap.

MR. REED:  We don't know that at this point, your Honor, and they're different companies.  With all due respect to opposing counsel, they're not in that case.  They said they want to participate, but that's not their case.  There's a separate case.  They're separate parties, separate counsel, and to the extent your Honor's decision informs this case, then they can take that into account in this case.

THE COURT:  Well, there's reasons for judicial economy not to go through claim construction, the same claims twice, and I prefer not to do that.

MR. REED:  I don't disagree, your Honor, and we'd be happy to have some kind of -- let your Honor take whatever consideration it wants from the first claim construction

18

proceedings, but there's -- that's only three of the seven in the previous case.  We'd be putting four patents which have nothing to do with this case on hold on the basis of three --

THE COURT:  All right.  So I'm not going to cross -- I don't know anything about that case at this point.  I'm not going to -- but it does suggest to me that another reason why I'm not inclined to -- to delay this claim construction here.  So I'm going to set the dates that have been proposed by Plaintiff.  I understand you're not going to be pleased with that because it screws up your holiday season.  It screws up your trial preparation, but you're an experienced lawyer.  You have some resources, and so that's the way it's going to be.  So I'm going to set that schedule, and I would like you -- oh, the tutorial.  Okay.

All right.  I'm going to set the schedule, but the tutorial I'm going to have to move to the 24th.  I'm hoping the tutorial -- we won't need more than an afternoon.  I'm sorry.

All right.  I'm going to keep these dates, but I have to advance the tutorial.  I know your reply construction brief is due the 18th, and I don't know if that would interfere with your ability to conduct a tutorial.  I can either do it on the 19th or --

MR. REED:  No, your Honor.  That's our brief, and we have no objection to the 19th.

Case 3:15-cv-04307-EMC   Document 84   Filed 10/27/15   Page 19 of 30

19

MR. KIRSCH:  We're fine with that.

THE COURT:  This is just a tutorial.  I'm not going to take all day on that.  So on the 19th.  Okay.  Yeah, claim construction on the 2nd, and if we need to we have the 3rd available, right, Betty?  And if we have to spill over in the afternoon, we can.  That way that's when I also have two days in a row, because if I don't, then we're off a bit.  And what I'd like to do is schedule a further come back here status to talk about the rest of the schedule, have you meet and confer to look at that now that you know the claim construction date, and assuming it takes a reasonable amount of time to get a claim construction ruling out, when we start the next round and beginning the trial.  But it does seem to me that something closer to the time frame that the Plaintiff has suggested is -- is more reasonable, but I want you to see if you can negotiate something, and you can check with Betty in terms of trial dates that are available.

MR. MANCINO:  Your Honor, with respect to the second phase, if I can just inform the Court.  The Court already knows that we're dealing with five patents.  There's hundreds of products at issue, and the amount of international depositions in the case, we're going to have to go to Singapore, Taiwan and -- there's going to be probably approximately 30 to 40 depositions taken in the case. There's numerous substantive counterclaim issues that are

*Echo Reporting, Inc.*

20

going to be brought in this case.  So we are going to be asserting a breach of Rand counterclaim, actually, multiple breach of Rand counterclaims in the case.

This case actually -- there's already been a breach of Rand counterclaim case brought against the Plaintiff in front of Judge White dealing with the supplier of 80 percent of the chips on the WiFi side of this case that we've been discussing, and Judge White, through trial, sort of determined that, in fact, they had violated their Rand obligation with respect to the Realtek chips.  So, you know, we're going to be bringing a counterclaim, one, asserting that but for the fact that they violated their Rand obligations with respect to the Realtek chips that we would not have had to go to the ITC proceeding with respect to 80 percent of the WiFi products.  On top of that, we're going to be asserting a breach of contract claim arising out of the failure to offer Rand licensing terms with respect to the WiFi chips under their obligation under 802.11.  We're going to be bringing a breach of contract that they failed to meet their Rand obligations with respect to the MPEG -- I think it's -- the MPEG standard.  And then on top of that, they also failed to -- breached their contractual obligation with respect to MPEG-LA.  So this is going to be a very complex case on the counterclaim side of it.  That's going to really impact also the schedule.  So it's not just the patent case.

21

I just wanted to make sure that the Court's aware of that issue as we're considering what the appropriate trial date would be when we get to that point.

THE COURT:  Knowing their resources and knowing what the magnitude of the breadth of the counterclaims as well as the number of patents and claims here and gear up accordingly.

MR. REED:  That's exactly right, your Honor. These are not unsophisticated parties or counsel.  We've seen these claims before.  We've seen similar claims before.  The Court's familiar with these type of claims.  There's no reason for a great departure from a typical schedule just because we have these threatened counterclaims which we haven't had a chance to see yet.

MR. KIRSCH:  Actually, they have seen at least a draft of the counterclaims in a 60-page draft that was attached to the motion to transfer.  So the are familiar with at least some of the allegations that we're discussing.

THE COURT:  Well, I'm not saying that's irrelevant.  That's why I wanted you all to look at it realistically, but it also means that, you know, you can push on different ends, and one place to push is you all are going to have to gear up.  If this case is of that magnitude, you're going to have a busy several months after claim construction.  So that's where we'll leave that.

Let me ask about ADR.  I know you've had obviously discussions before.  There was a licensing agreement at one point during the ITC proceedings.  If there was at least a partial resolution before, why not go back to some kind of ADR process now?

MR. KIRSCH:  I think the parties are very far apart in their current settlement position.  So it's my opinion that we would need some kind of further decision by the Court or a sea change type of event to really draw the parties closer together, which may, of course happen, but right now the parties are at fairly extreme ends.

MR. REED:  I don't disagree with that, your Honor. The parties have met.  At least the parties have met on the order of two or three dozen times discussing these issues. They're sophisticated parties.  There was a license in place. There's no mystery here between the parties as to what their positions are.  And, as counsel indicated, it's been communicated to us that unless there is some type of finding of liability, there's really no interest in coming to the table on this.  So we'd like the Court to move expeditiously so we can find -- get some kind of resolution, court resolution, because we think absent that court resolution, there's likely not going to be any type of extrajudicial resolution.

THE COURT:  Court resolution of liability?

23

MR. REED:  Liability or something that informs the parties of what the likely liability will be downstream.

THE COURT:  So how helpful will a claim construction be do you think to this process?

MR. REED:  On some of the patents it may be helpful.  On others, not so much.

MR. MANCINO:  Your Honor, it's really -- in the ITC, the ALJ in its initial determination had actually ruled that three of the patents were not infringed that are at issue in the case or at issue in the ITC, and then they also ruled that the '958 was both invalid and not infringed on the final determination by the full commission.  A lot of that dealt with the claim construction rulings that were issued in the ITC, and the ALJ in the ITC did indicate actually a propensity towards granting non-infringement of the fourth patent if the claim construction they adopted was the claim construction that had been set forth in the Barnes and Noble case.  So we do think claim construction will be extremely informative as to what the liability is of the respective parties, and hopefully when we come out of that, at least one side or the other will be more informed about our possibility of success or failure.

THE COURT:  Okay.  Well, sounds like we take the usual course here.

All right.  I will get out a scheduling order.  Let's

24

set a further status conference.  Let's see, maybe a good time to set that would be -- well, I guess the question is whether there's any need to have a status conference prior to the claim construction hearing.  It seems like there's no great huge events that are going to occur.

MR. KIRSCH:  Not in our view, your Honor.

MR. MANCINO:  Your Honor, I think it would make sense to have a claim construction hearing either immediately after the order or sometime between the hearing and the issuance of the order.

THE COURT:  You mean a status conference?

MR. MANCINO:  Yes.  Yes, your Honor.

THE COURT:  Right now let me -- I'll double up the claim construction hearing and set a status conference on the 2nd of May, and we can always reset that for a date after the claim construction order comes out and we kind of take a breather and see where we are at that point.

In the meanwhile, I'd like you to meet and confer and propose some realistic dates and time frames for trial, and if I need to have a status conference in the meantime to set that date, I will.  Otherwise, I may -- you know, if you come to an agreement that works with me, I will try to accommodate that.  If not, we can discuss that at the status conference. But in the next lets say two or three weeks, if you can sit down, see if you can come up with a trial date that's closer

to the front end of 2017, I'd appreciate that.

MR. MANCINO:  Our biggest issue with that, the back end, in addition to the complexity of the case is that in the ITC action there were 10 expert witnesses between the two parties, and if you look at the proposed schedule by the Plaintiff, they're going by the two-week period, so motion for summary judgment and Daubert motions being filed on the same day and responses due --

THE COURT:  That's why I want you to meet and confer, because I don't know how realistic it is to expect 10 -- if it is, then you're going to have to take that into account.  I mean, it's got to be reasonable.

MR. REED:  Your Honor, that number included experts on issues that are in ITC only in domestic industry. So that's not an accurate representation of what we're looking at.

THE COURT:  That's why I'm going to ask you to meet and confer rather than --

MR. REED:  We'll have Rand and different issues.

A couple of other issues that I just want to bring to the Court's attention.  First, there was a motion to dismiss the willful infringement allegations and the inducement to infringe allegations.  A third amended complaint has been filed which effectively moots procedurally the motion to dismiss on those two.

For judicial efficiency, I wanted to proffer the potential option of the Court treating the motion that had already been filed on those two grounds to be the same in the opposition and reply and just rule on it based on the prior briefs that have been submitted, because there is no material change to the actual third amended complaint that implicates either of those two arguments.  So it's to the Court's discretion as to whether the Court would like us to do a new motion setting forth basically the same arguments as we did before, but for the third amended complaint, just for the purposes of efficiency and not killing too many trees, I wanted to represent the possibility of just ruling on those two based on the -- the documents that had already been filed.

THE COURT:  What -- what is still live after the third amended complaint in terms of motions?

MR. REED:  Technically they're moot right now because by filing the third amended complaint, we've mooted those two, but the two are inducement to infringe and willful infringement.

MR. KIRSCH:  Your Honor, if I may --

THE COURT:  Those issues are still at issue?

MR. REED:  They're still at issue.  In our view, they haven't come close to meeting the plausibility requirements set forth in Iqbal and Twombly, and we've

addressed that sufficiently in the moving papers and the reply. I think they've addressed their argument sufficiently in the opposition. If they're inclined to want to rebrief it, that's fine, but I just wanted to raise the possibility potentially of avoiding having to do that and just treat that as having been applied at the third amended complaint because there isn't any material difference on the -- on those issues in --

THE COURT: Apply your brief to the third amended complaint because it's not materially different, rather than rebriefing?

MR. REED: Or just treat it as such because really, like I said, there isn't a single change that was made to the third amended complaint that implicates those to the best of my understanding.

MR. KIRSCH: Your Honor, if I could address two points there. One, I think that would be extremely confusing for the Court, because the motion to dismiss the second amended complaint, only -- only half of it addresses those issues. So you'd have to -- we would have to sit there and parse, okay, what goes to the issues that are still alive in the third amended complaint, what goes to the issues that are mooted by the third amended complaint, and also that was briefed under different law in terms of the District Court law, and there are some differences in terms of what the

28

Northern District and how it's handled some of these issues and how it's handled in the Central District where the motion was filed.  So we would suggest in lieu of try and have the Court figure all that out on its own, we have new briefing, and we just have an accelerated schedule for it.

THE COURT:  All right.  Let's do that.  You've already filed, is that right?

MR. KIRSCH:  That's correct.  Third amended complaint is on file, your Honor.

THE COURT:  Largely cut and past?  I don't know.

MR. KIRSCH:  It's largely cut and paste.  There won't be material differences.  We could have it on file in a week, yes, your Honor.

(Pause.)

THE COURT:  All right.  And December 3rd is going to be the hearing date, but I'll -- I guess I'll have the briefs a couple of extra weeks.  All right.

MR. REED:  And one last -- I wanted to bring to the Court's attention that we are anticipating filing a Section 101 motion for judgment on the pleadings on one of the five patents.  So obviously you'll deal with that when it comes in, but I just wanted to make sure that the Court's aware that we are anticipating doing that.

THE COURT:  All right.  So we'll see you December 3rd.

29

ALL:  Thank you, your Honor.

THE COURT:  Thanks.

(Proceedings concluded at 10:19 a.m.)

*Echo Reporting, Inc.*

30

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, October 27, 2015

*Echo Reporting, Inc.*