UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

LSI CORPORATION, et al.,            )
                                    )
          Plaintiffs,               )
                                    )
   VS.                              )   NO. C 15-4307
                                    )
FUNAI ELECTRIC COMPANY, et al.,     )
                                    )
          Defendants.               )
_____    )

                          San Francisco, California
                          Monday, December 7, 2015

                   TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:
                    KILPATRICK TOWNSEND AND STOCKTON
                    1400 Wewatta Street, Suite 600
                    Denver, Colorado 80202-5556
               BY:  **MATTHEW HOLOHAN**
                    **DAVID SIPIORA**
                    ATTORNEYS AT LAW

For Defendants:     Baker & Hostetler, LLP
                    312 Walnut Street, Suite 3200
                    Cincinnati, Ohio 45202
               BY:  **KEVIN KIRSCH**
                    **DAVID MANCINO**
                    ATTORNEYS AT LAW

Reported By:   Lori Stokes, CSR No. 12732, RPR
                    Pro Tem Reporter

Monday – December 7, 2015                              12:00 p.m.

P R O C E E D I N G S

---oOo---

*THE CLERK:*  Calling Case 15-4307, LSI versus Funai Electric.

Counsel, please come to the podium and state your name for the record.

*MR. KIRSCH:*  Good morning, Your Honor.  Kevin Kirsch and David Mancino on behalf of the various Funai defendants.

*MR. HOLOHAN:*  Matthew Holohan and David Sipiora for Plaintiffs.

*THE COURT:*  Two issues.  One is the pleading with respect to induced infringement.  And it seems to me that there's enough alleged with respect to the conduct involved here and how, for instance, resellers were encouraged to infringe the marketing materials, instructions and this sort of thing.

I think the closer issue is, number one, whether the accused products should be identified with greater specificity.

And second, sort of the lumping of all the defendants together without much other than sort of conclusory allegations about their involvement, their role, and the role of the defendant in inducing their conduct.

And I will say, with respect to the accused products'

identification, I understand there has been infringement contentions that I don't think completely specify an exhaustive list of accused products or where that stands.

*MR. HOLOHAN:* Yes, Your Honor. There is an exhaustive list of accused products that were able to be identified based on publicly-available information, and that amounts to hundreds of products identified by part number.

*THE COURT:* And that's an exhaustive list, as far as you know?

*MR. HOLOHAN:* As far as the products that we were able to identify as being made, used, sold, offered for sale or imported into the U.S., based on publicly-available information, that is all the products we've identified at this point.

Now, in terms of past products that may no longer be on the market, that would have to be identified in discovery under the Court's case schedule. But we identified for them all the products that we are aware of that we are able to accuse of infringement.

*THE COURT:* How many products are there?

*MR. HOLOHAN:* I had the specific number in the opposition, but it's several hundred.

*THE COURT:* What about the role of each defendant?

*MR. HOLOHAN:* Well, Your Honor, the complaint has detailed paragraphs identifying each defendant and each

defendant's role in the enterprise here and the relationship among the various defendants.

And at the pleading stage, our position is that the defendants were acting in concert, and thus the knowledge of infringement and the relative conduct to encourage infringement is attributable to all the defendants.

*THE COURT:* When you say acting in concert, I know you have it in discovery, but are you suggesting that there was an overlapping set of decision-makers or that there was an activity agreement between specific members and entities? What's the theory here?

*MR. HOLOHAN:* Your Honor, let me start by saying, I don't believe they raised this specific argument in their opening papers, so we have not had a chance to exhaustively brief this issue.

But the theory set forth in the complaint is that they're all under the umbrella of Funai. There's the foreign manufacturer, there's the U.S. entity, there's the importer, the service entity, and they're all acting in concert under the Funai umbrella, as it were.

And in that sense, they're acting in shared conduct with shared knowledge as to their infringement of these patents. And I know that in reply, they cited a couple of cases from the District of Delaware that, again, we did not see in their opening papers. So, if further briefing on this issue is

necessary, we're happy to provide you with that.

THE COURT:  But you believe, as far as pleading goes, you've provided sort of notice at this point explaining the relationship of the various defendants --

MR. HOLOHAN:  Yes, Your Honor.

THE COURT:  -- at least their general role in things?

MR. HOLOHAN:  Yes, Your Honor.  In paragraphs 6, 7, 8 and 9, each of the defendants is individually named, and their conduct and relationships are identified.

And again, these are all Funai entities.  PNF USA is a Funai entity, at least that's our understanding.  They know what their relationship is, and they know how they're acting in concert with each other.  So the notice issue is really not a problem here.

THE COURT:  All right.  Your response?

MR. KIRSCH:  Your Honor, we're over three years into the litigation.  There's been an entire ITC proceeding. Whatever exclusive possession of facts that each of the Funai entities held is long gone at this point.

Each of the individual Funai entities alleged to infringe in this instance have very discrete and different roles.  PNF USA, Inc. only sells certain product lines.  The service entity services -- I mean, they are each individual entities with different roles.

They've had plenty of opportunity to take discovery to understand those facts, yet all they do is lump in conclusory allegations into the complaint that asserts that they all basically do the same thing.

I wanted to address a few of the points. This is the quintessential case of bare-bones pleading. These are all conclusory facts. The facts supposedly that support a Commil analysis regarding whether there was sufficient specific intent of inducement to infringe are really premised on this allegation of aiding and abetting others by just marketing the accused product.

There's no actual identification of what specific marketing activities, what statements are said, what documents we've used to market that supposedly give rise to the specific intent to induce acts that infringe or that's done by creating or distributing data sheets or instructions on how to use the products.

There's no specific allegation. These are just general statements, conclusory statements, that don't support the standard set forth in the Global-Tech and the Commil cases on what is necessary in order to allege inducement to infringe.

They don't break down by defendant what each of the defendants do. They don't have any actual non-conclusory facts -- alleged facts of even knowledge of the patent. They just say knowledge of the patent. They don't have any actual

non-conclusory alleged facts of the specific intent to induce conduct.  They don't have any actual non-conclusory facts about acts of direct infringement by the customers or the end-users. They don't identify any specific products in the complaint. There's no facts alleged concerning willful blindness.

So you have a situation here where after three and a half years of litigation in the ITC proceeding and three amended complaints, we're still in a third amended complaint that has bare-bone conclusory allegations with lumped-in nonspecific statements.

So we do believe that the inducement allegations are insufficient and that the motion to dismiss should be granted with respect to the inducement claim.

*THE COURT:*  So what about -- this is not your sort of typical case for what is served right out of the box, and yet no basis -- and there's limited access to information, et cetera, et cetera.  This case has been pending, you've had some discovery, correct?

*MR. HOLOHAN:*  Yes, Your Honor.  And, in fact, I would say that that cuts in the complete opposite direction. They're standing here saying they have no idea what this case is about and no idea how to respond to our allegations, where this case went to trial on four of the five patents, went all the way through trial and then to appeal on one of the patents.

So at the pleading stage, under the applicable standard

that's set forth in the case law that we cite in our briefs, all of the allegations are more than sufficient to meet -- to make out a case for induced infringement under the applicable law.

And responding to --

THE COURT: But if you've gone through a great deal of proceedings, why not be more specific about your precise theory of inducement? What is it that, other than sort of general allegations -- why can't you be more specific?

MR. HOLOHAN: Well, Your Honor, we could be more specific if Your Honor decides that's necessary. We believe under the case law for a complaint for patent infringement, that level of specificity is not required.

And I will say that the basic framework for induced infringement that we have set forth in this complaint, active encouragement of others to -- they encourage -- they sell their products to distributors, the retailers; the retailers sell products to customers; the customers use the products. There's nothing mysterious about that.

They distribute marketing materials and instruction booklets and data sheets instructing the people how to use their products in an infringing matter, there's nothing mysterious about that.

In the ITC, that basic framework with just a little more detail formed the basis of the ALJ's conclusion that Defendants

did, in fact, induce infringement of one of the patents.  So they know exactly what this case is about.  And under the pleading standards under the applicable law, they have more than enough information in the complaint for these claims to go forward.

THE COURT:  So give me an example.  You say there was some more specificity that came out in the ITC -- what's an example besides marketing generally, distributing data sheets, instructions?  What's an example of something more specific?

MR. HOLOHAN:  Your Honor, frankly, there wasn't much more detail than that in the ALJ's conclusion.

He said with respect to the '087 patent, that there was direct infringement by the products, both in their sale and uses by end-users.  The ALJ found that the defendants' marketing materials and related documents instructed end users and encouraged end users to operate these products, and thereby infringe the patent.

The ALJ's analysis is only about, I want to say, two pages long.  But it was all just slightly fleshed out with the facts that we've pled in this complaint.

And I'll just note, with respect to the other three patents that were in the ITC case, it wasn't that there was an insufficient showing of induced infringement.  The ALJ found, based on very thin claim construction distinctions, that it was a direct infringement, so it never reached the issue of induced

infringement as to those patents.

THE COURT:  But on the one claim where there was, where inducement was in play, the ALJ found inducement?

MR. HOLOHAN:  Yes, Your Honor, with the '087 patent.

THE COURT:  So the shoe is on the other foot, then. I mean, can you really say that your client is surprised and is in the dark about what the theories of induced infringement are?

MR. KIRSCH:  Well, for one, the ALJ -- the ITC did, in fact, find for our client on three out of four patents.

The one patent that the opposing counsel is referring to, there was an actual settlement reached between the parties that covered all products that were sold up through September 30th of this year.

So any of the conclusions that the -- conclusions that the ALJ made with respect to that particular patent would not actually be pertinent to the facts in this case because these are different products --

THE COURT:  Isn't the general theory of the roles of these defendants what the main defendant did in inducement?

MR. KIRSCH:  It's the same.  They're different patents, but the products are essentially the same, the role is the same.

THE COURT:  So how can you claim that your client, after three years of litigation, including a trial, say it has

no idea what the theory of induced infringement is?

MR. KIRSCH: So, Your Honor, in our view, when we view and assess this particular situation, we're looking at the four corners of the complaint and what's been alleged in the four corners of the complaint. They've had an opportunity to --

THE COURT: But it does allege through marketing material, and marketing and induce, et cetera, inducing people to buy and use, distribution of data sheets, instructions how to use. Why isn't that enough?

Why isn't that enough notice for -- am I supposed to ignore -- you yourself said, well, in the context of three years of litigation, they ought to be able to plead more. I mean, either the three years of prior litigation for ITC is relevant or irrelevant. You can't have it both ways.

Is that contextual or not?

MR. KIRSCH: I think it is contextual. The fact is that we've gone through this proceeding before. But again, for purposes of this determination, we believe that you should be looking at the four corners of the complaint.

And looking at vague conclusory terms like marketing materials and instructions, every single company that sells products -- almost every single copy company that sells products -- is going to include some kind of marketing materials and instructions regarding the use of their product.

There's no allegation in here of a specific intent by any of the specific Funai entities that they induce acts which cause infringement based on specific allegations with respect to this marketing material and those instructions.

Again, we believe that the information set forth in the complaint is insufficient with respect to pleading induced infringement on the case, Your Honor.

THE COURT:  All right.  Let me ask about the willful infringement.

Why is this so conclusory at this point, both -- I mean, putting aside the whole Seagate question on whether you have to seek preliminary injunction or not, whether Judge Chhabria's analysis in the Monolithic Power case should be persuasive or not, the point is, there's not much alleged here, whether it's pre or post filing knowledge, to support a claim of willful infringement other than conclusory allegations.

MR. HOLOHAN:  Well, Your Honor, to show willful infringement, we have to show that they have knowledge of infringement or --

THE COURT:  Well, the infringement, doesn't it have to be an objectively high likelihood of infringement?  They may be aware of the patent, but --

MR. HOLOHAN:  Well, the specific willfulness allegations say that they infringe willfully if they're infringing --

*THE COURT:*  That's what's conclusory.

*MR. HOLOHAN:*  But in the pleading stage, that is what willful infringement is.

The complaint further says that they have noticed -- based on the ITC case, they know all about our infringement theories, they know -- we've shown exhaustively for four or five patents that they, in fact, infringe.  We've pled the elements of willful infringement and facts to support it, and so we believe that's sufficient --

*THE COURT:*  Well, but you didn't prevail under all five.

*MR. HOLOHAN:*  We did not, Your Honor.  And to the question of whether we can meet the burden of proving willfulness based on the history of the ITC, that is a question for summary judgment.  But in the pleading stage, we have alleged that they infringe willfully.

*THE COURT:*  Well, there are numerous cases, including those in this court, that say sort of boilerplate, conclusory allegations pre-suit knowledge, the factual details just doesn't cut it.

*MR. HOLOHAN:*  For pre-suit damages, that's correct, Your Honor.  For post-suit -- I think there's a --

*THE COURT:*  Well, post-suit, if one were to read Seagate in one direction, you can say, well, you've got to bring a motion for preliminary injunction.

*MR. HOLOHAN:*  Yes, Your Honor.  And I'll acknowledge that there's a split in this very district on the question of post-suit willfulness.

And what I think you'll find in the case law is that there are decisions that say in your originating complaint, you can allege willfulness and obtain enhanced damages from that date forward.

But even in the cases that hold you cannot do that, they say that, to the extent willfulness arises over the course of litigation, you can then seek to amend to add a claim of wilfulness.

That's essentially what we've done here.  In October 2015, which is the complaint that we're talking about here, the third amended complaint, we alleged willful infringement and knowledge of infringement based on the ITC proceedings.

Now, in an ITC proceeding, when you file your complaint, you have to have claim charts.  So the infringement was laid out in exquisite detail on the day the complaint was filed.

So they have had notice and knowledge of our infringement theories from that date.  And now sitting here in 2015, we're entitled to collect damages on a willful infringement at least going back to the day that the original complaint was filed.

*THE COURT:*  The date the original complaint was filed, the --

*MR. HOLOHAN:*  Here and the ITC.  It was the same

day.

THE COURT:  Your response?

MR. KIRSCH:  Again, citing to the date of the filing of the original complaint in the ITC, I don't think helps their position, given that it is the same date as the filing in this case.  So clearly, we did not receive any notification of the ITC allegations prior to the date of the filing of this particular lawsuit.

It's our position that they needed to -- in order to move forward with their case of willful infringement -- allege pre-suit notification, they needed to allege that the Funai entities acted despite objectively high likelihood that there was actually constituted infringement of a valid patent.  We don't believe that they've cited any specificities to support that.

THE COURT:  What about the post filing, since there was a filing of the ITC, as well, and with the -- what I'm told is a high degree of detail?

MR. KIRSCH:  So in our view, the Seagate decision forecloses that possibility, and there still needs to be pre-suit notification.

Again, I'll raise concern also about the fact that they're still alleging willful infringement on three patents in which the ITC, in fact, found that they were either not infringed or invalid.

*MR. HOLOHAN:* Excuse me, Your Honor.  I don't want to interrupt; I just want to make the record clear.  The ALJ found infringement as to one patent and not infringement as to three patents.  Two of those patents were taken away from the ITC.  The third one -- via settlement.

The third one expired.  The ITC  the merits of one patent, the '958 patent, and found that it was not infringed and not valid.

That determination went to the federal circuit, which affirmed on other grounds and never reached the merits as to that patent.  I just want the record to be clear so we're --

*THE COURT:* All right.  But where does one infer objectively high risk of infringement from all of that?  With respect to the claims for which willful infringement was sought herein?

*MR. HOLOHAN:* So claims for willful infringement were brought as to all five patents, and the -- again, the pleading just lays out the elements of willful infringement by stating that the infringement has been willful.

Now, if we need to amend that and say that -- just go one step and cite the actual elements of willful infringement, we can do that.

But again, I think they're on notice of the theory as to willful infringement, and we're entitled to pursue that at least on a post-complaint basis.

*MR. KIRSCH:* Just one additional comment.

I know my opposing counsel keeps using the term "notice." But when it comes to inducement to infringe and willful infringement, we're not dealing with the notice of pleading form 18 type allegations; we're dealing with the specificity requirements under Iqbal and Tuolumne, and we don't believe that they satisfied obligations under those.

*THE COURT:* All right. I'm going to deny the motion with respect to the induced infringement allegations. I think the allegations, for the reasons I've stated, are sufficient.

There is some explanation about the particular conduct with respect to each of the defendants here, but with respect to willful infringement, we have really nothing but conclusory allegations, certainly with respect to prefiling knowledge.

The allegations are not sufficient with respect to post filing, although it's a bit more complicated because of the ITC proceedings and because of the Seagate question, I am going to find that notwithstanding -- even if one were to assume that Seagate does not necessarily preclude a willfulness claim, post filing in the absence of a preliminary junction motion, that the allegations here nonetheless are still too conclusory to state a claim. I will grant leave to amend in that regard.

If you have something more specific, and you want to be specific about what came out in the ITC proceedings or whatever else happened post filing, but I'm going to grant the motion to

dismiss with respect to the willfulness claim.

THE CLERK:  The next hearing is April 19 for the tutorial.

THE COURT:  Okay.  I just received the filing with respect to my request in the Avago case to come up with a claim.  To tell you the truth, I haven't had a chance to look at it very carefully, and they're not here, but I take it this is something all counsel can talk about?

MR. HOLOHAN:  Yes, Your Honor.  Mr. Kirsch, Mr. Newton and Mr. Sipiora and I spoke by phone last week, and then the parties jointly prepared the pleading you have in front of you.

THE COURT:  Okay.  I will look at that.  And if there's a need for either CMC or conference call, I'll let you know; otherwise, I'm trying to figure out a way to do this economically and efficiently, so I will definitely take a look at this and take it under advisement.

MR. KIRSCH:  Your Honor, one additional issue. Not to add complexity to the document that you're going to be looking at, but I feel it's incumbent upon us to inform you that they have, in fact, filed another lawsuit against another party, and they did it a day or two after the last CMC in the other case.

The lawsuit is against Acer, an entity.  It's filed in the Northern District of California.  I believe that Your Honor

will probably get that case, as well.  And I believe that there's commonality with respect to our case on three of the patents with Acer and commonality with respect to the other case on five or six.

And I just wanted to bring it to your attention, that, while we have submitted the sort of dual proposals, we do not mention the Acer case filing in that document.  So to the extent that that's going to influence how you rule, I wanted to make sure you had that information.

MR. HOLOHAN:  Your Honor, just to be clear, that case has been assigned to Your Honor, and we did file notices identifying all three cases in all three cases.  So we weren't trying to be sneaky.

MR. KIRSCH:  I wasn't suggesting that.

THE COURT:  I did see that notice.  I can't make any decisions without all the players being involved, but I would be curious to hear what your thinking is of how that would impact this proposal.

MR. HOLOHAN:  I can let Mr. Sipiora speak to that.

MR. SIPIORA:  I don't think it fits together.  The Funai case, as you've heard, we've been through trial with Funai.  In the Asus case, we were two months from the close of discovery in the East District of Texas before it was transferred.  It was a long-standing motion.

Acer case has no history; it's from scratch.  And we've

talked to Acer for several years, and there was a license in place, but the license expired. But in terms of litigation, there's no history.

So for a practical point of view, the consolidation that we've now talked about in terms of the Markman in the submission the parties jointly made, that makes sense.

There's some dispute about the briefing, they want another round of briefing you'll see in the submission, but the efficiency will come from that.

When the Acer case comes up, you'll have the benefit of that practical experience. To put Acer into the mix at this point, given where it's at, would relay everything else much more than --

THE COURT: So it's too far behind?

MR. SIPIORA: That's right.

MR. KIRSCH: And, Your Honor, obviously, you'll make the decision as to whether you want to go through multiple claim constructions. I think Acer -- I don't want to speak for Acer, but I'm speculating Acer may want to be involved in the claim construction process since there is commonality in five out of six of the patents with the Acer case and three with ours.

Again, I just want to make sure it's to your Court's attention, and if the Court is inclined to have some type of consolidation, I wanted to make sure you were aware of that

fact.

THE COURT:  Why don't we do this:  Avago is coming in on January 14th for a CMC, a prescheduled CMC.  I wonder if it would make sense to have you in here in case we need to iron out anything at that point.

MR. SIPIORA:  I didn't realize we had anything January 14th.

MR. KIRSCH:  Is it the Funai case?

THE CLERK:  It's a motion and CMC in the Avago --

MR. SIPIORA:  There's a motion on that date, yes.

THE COURT:  Yes, and a CMC.

So I'm wondering whether we ought to have you -- I'll tell you what.  Why don't you keep the 14th available in case I want to consolidate the CMC.  I may not.  We'll let you know.  Put it on for now, but I may vacate that if it's not necessary.

THE CLERK:  And Counsel, that will be at 1:30.

MR. KIRSCH:  Thank you.

MR. HOLOHAN:  Thank you, Your Honor.

MR. SIPIORA:  Thank you, Your Honor.

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.


DATE:   Monday, January 25, 2016




_Lori Stokes_
_____

Lori Stokes, CSR No. 12732, RPR
U.S. Pro Tem Court Reporter